IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                Plaintiff,          Case No. 3:02 CV 1378

-vs-

                                                MEMORANDUM OPINION

LIBERTY BANK, N.A.,

                Defendant.

KATZ, J.

This matter comes before the Court on Defendants' motion to dismiss (Doc. No. 85) the first amended complaint, Plaintiff's opposition (Doc. No. 93), and Defendants' reply (Doc. No. 101). Also before the Court are the arguments contained in memoranda filed by the parties pertaining to the original motion to dismiss. The Plaintiff has also moved to file a second amended complaint which is opposed by the Defendants. For the reasons that follow, Defendant's motion is granted in part and denied in part. In addition, Plaintiff's motion to file a second amended complaint is granted.

## BRIEF BACKGROUND

On March 4, 2004, in a twenty-five page memorandum opinion, this Court addressed Defendant's motion to dismiss aimed at the original complaint. (Doc. No. 64.) In that decision, the Court dismissed Counts 1 and 2, both sounding in RICO; Count 3-to the extent it involved RICO; and Counts 4 and 5 alleging a failure to maintain proper bank records under both federal and state law, Count 7 sounding in negligence under federal law duties. Additionally, Defendant's

motion was denied as to Count 3 (aiding and abetting under common law), Count 6 (spoliation of evidence), and Count 8 (negligence under state law).

On June 11, 2004, the Receiver filed a first amended complaint (Doc. No. 79), reasserting the dismissed claims and adding new claims in Count 9 (breach of duty of good faith), Count 10 (violation of Ohio Corrupt Activities Act), Count 11 (Ohio conspiracy claims), and Count 12 (contribution and indemnity). Without belaboring the history of this litigation, the Court now turns to the legal arguments at issue.

## RELEVANT LEGAL STANDARDS

Generally, Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994) *cert. denied*. 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). A facial attack challenges the sufficiency of the pleading itself. Upon receiving such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio. 1997).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94

S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *Westlake*, *supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2005).

## DISCUSSION

*A. Counts 1 & 2-Racketeer Influenced and Corrupt Organization ("RICO") Claims*

In the March 4, 2004 Memorandum Opinion, the Court dismissed Count 1 under 18 U.S.C. § 1962 ( c) as the Defendant's conduct, as alleged, was determined to be insufficient to sustain the operation or management test per the Supreme Court's directive in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

According to the Receiver, the amended complaint reasserts the RICO claims for two reasons. First, the Receiver seeks to preserve his right to appeal dismissal of Counts 1 and 2[1]. Second, the Receiver added violations of the Bank Secrecy Act as predicate acts sufficient to withstand the operation or management test under *Reves*.

The relevant additions to Counts 1 and 2 are contained in the following paragraphs to the Amended Complaint:

> 119a. In addition, the Liberty Defendants participated in the operation and management of the enterprise by one or more of the following:
> a. Willfully failing to file SARs;
> b. Willfully failing to monitor Capwill's transactions for possible suspicious activities, money laundering, or other violations of law;

---

[1] The Amended Complaint states in pertinent part: "Plaintiff retains this Count in order to preserve its right to appeal the Court's dismissal of this Count." (Doc. No. 79 at ¶¶ 108 and 183.)

3

       c. Failing to know Capwill as a customer by examining the
available facts, including the background and purpose of the transactions at issue,
all in violation of the Bank Secrecy Act and regulations promulgated thereunder.
  119b. These willful omissions to perform duties required by the Bank
Secrecy Act were not part of the normal banking services in the context of a normal
business relationship, but rather constituted affirmative illegal acts committed by
the Liberty Defendants on their own initiative and in conspiracy with, and or in
knowing and substantial assistance of, the rest of the JAC Enterprise.

Having examined these additional claims in light of the operation and management test, the Court finds that they include additional missteps regarding banking activities, however, they are insufficient to meet the operation or management test as they "do not constitute exerting control over the enterprise." *See Dubai Islamic Bank v. Citibank, N.A.,* 256 F.Supp.2d 158, 163-165 (S.D.N.Y. 2003) (characterizing the failure to "know your customer" information coupled with knowledge about illicit activity was insufficient to allege participation in a racketeering scheme and citing cases therein). The new allegations are additional grounds for the negligence claims, they do little to bolster the claims made pursuant to RICO.

While the Court understands the Receiver's procedural concern of reasserting these claims for purposes of appeal, they are insufficient to meet the requirements under *Reves*. Accordingly, Defendants' motion to dismiss is granted as to Counts 1 and 2 of the Amended Complaint.

*B. Count 9-Breach of Duty of Good Faith*

The Defendants move for dismissal of Count 9 on the basis that it states no cognizable cause of action exists under the Uniform Fiduciaries Act ("UFA"), Ohio Rev. Code §§ 1339.03 to 1339.13, and even if one exists the Plaintiff's claim fails as a matter of law.

The Ohio Supreme Court discussed the purpose behind the UFA as follows:

In addition to the adoption of the Uniform Commercial Code, the adoption of the
Uniform Fiduciaries Act in Ohio modifies the common law. The Uniform

4

> Fiduciaries Act provides a defense, when asserted under Civ. R. 8(c), for those who knowingly deal in good faith with an authorized fiduciary. . . .
>
> The Uniform Fiduciaries Act was developed to facilitate commercial transactions, by relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary. [ ] *By altering the common law*, the Act relaxes "'some of the harsher rules which require of a bank and of individuals the highest degree of vigilance in the detection of a fiduciary's wrongdoing.'" . . .
>
> The Uniform Fiduciary's Act shields a bank from liability when the bank knows that the individual is acting for the benefit of another. The inquiry to be made is not only whether the bank had knowledge of the existence of the fiduciary relationship but also whether the fiduciary in fact possessed the authority to conduct the transaction in question. [ ] This test is consistent with purposes of the Act to protect those who honestly deal with another knowing him to be a fiduciary and to place the responsibility of employing honest fiduciaries on the principal.

*Master Chemical Corp. v. Inkrott,* 55 Ohio St.3d 23, 26, 563 N.E.2d 26, 29 (1990) (citations omitted) (emphasis added). Stated differently, the UFA provides protection for the banking institution which acts in good faith with an authorized fiduciary unless it can be shown that the bank is aware the fiduciary is breaching their duty or the bank's dealing with the fiduciary amounts to bad faith.

In *Nations Title Insurance v. Bertram,* 140 Ohio App.3d 157, 746 N.E.2d 1145 (2000), an insurer brought suit against the bank after discovering that the insurer's escrow agent had taken escrow funds not belonging to him and invested them in high risk securities. One of the claims asserted against the bank was in the nature of a "duty to act in good faith and to exercise care and to detect [the wrongdoer's] breaches of his fiduciary duty and that [the bank] had breached those duties by allowing the [wrongdoer] to transfer escrow account funds for improper purposes." *Id.* at 161, 746 N.E.2d at 1148. In granting summary judgment on behalf of the bank, the appellate court analyzed the bank's duties under the UFA and ultimately determined that this conduct, while

5

perhaps negligent, did not rise to a deliberate evasion of knowledge akin to bad faith. *Id.* at 170, 746 N.E.2d at 1156.

While the Receiver's amended complaint sets forth Count Nine as a "Breach of Duty of Good Faith," the UFA is not expressly stated as a basis for this cause of action. The entire claim is surmised in the following two paragraphs:

> 215. Plaintiff incorporates by reference all prior allegations as if fully rewritten herein.
> 216. Liberty Bank and other Liberty Defendants, including the as yet unspecified Liberty Defendants who are listed as John and Jane Does, acted in bad faith in engaging in acts and the omissions pleaded herein.

(First Amended Compl., p. 50.)

Viewing Count 9 broadly, the same allegation as raised in *Bertram* appears to be raised by the Receiver herein. Therefore, a claim asserting a breach of a duty by the bank is a colorable claim at this juncture. Moreover, as the Receiver charges the Defendant with acting in bad faith and allegations of Defendant's "deliberate ignorance of Capwill's wrongdoing, and/or characterized by recklessly disregard of Capwill's wrongdoing, or otherwise wrongful and non-negligent," (First Amended Compl., p. 16), these claims are sufficient to state a claim at this stage of the proceedings. Accordingly, Defendant's motion to dismiss Count 9 is denied.

*C. Count 10-Violation of Ohio Corrupt Activities Act*

The Defendants also seek dismissal of Ohio Rev. Code § 2923.31 *et seq.* on the basis that analysis of the Ohio's counterpart to the federal RICO statute is similar and that dismissal of the federal claim is dispositive of the state law claim. In *FRC Int'l , Inc. v. Taifun Feuerloschgertabau Und Vertriebs GMBH,* 2002 WL 31086104 at *12 (N.D. Ohio 2002), Judge Carr noted that analysis under the federal RICO statute was likewise applicable to the state RICO

6

claims. *See also DeNune v. Consolidated Capital of North America, Inc.,* 288 F.Supp.2d 844 (N.D. Ohio 2003). Moreover, the court in *Universal Coach, Inc. v. New York City Transit Authority,* 90 Ohio App.3d 284, 293, 629 N.E.2d 28, 32 (1993), stated as follows:

> The Ohio Corrupt Activity Act, however, is directly adopted from the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. Section 1961 *et seq.*, Title 18, U.S. Code; *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.,* (S.D. Ohio 1986), 656 F.Supp. 49. The United State Supreme Court and numerous other federal courts have examined the elements required to establish a RICO violation: (1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Sedima S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346. We hold that the failure of a plaintiff to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief can be granted.

(Citation omitted.)

In moving to amend the complaint on the issue of the state RICO claim, the Receiver stated, "The proposed amended complaint adds a count for violating the Ohio 'baby RICO' statute. The allegations are virtually identical to the federal RICO allegations, except that allegations of 'operation or management' of the enterprise are not included." (Doc. No. 69, p. 11.)

In the March 2004 Memorandum Opinion, this Court determined the RICO claim as contained in Count 1 failed to meet the operation or management test, which were also fatal to the RICO claim in Count 2 (conspiracy). Additionally, the Court dismissed the aiding and abetting claim in Count 3 to the extent it was dependent on RICO.

Under Ohio's RICO statute:

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

Ohio Rev. Code § 2923.32(A)(1). In order to establish a successful RICO action, (1) the conduct of the defendant must involve the commission of two or more specifically prohibited state or federal criminal offenses; (2) the prohibited state or federal criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Salata v. Vallas,* 159 Ohio App.3d 108, 823 N.E.2d 50 (2004); *Kondrat v. Morris,* 118 Ohio App.3d 198, 209, 692 N.E.2d 246, 253 (1997), citing *Universal Coach, Inc. v. New York City Transit Auth.,* 90 Ohio App.3d 284, 291, 629 N.E.2d 28, 32-33 (1993). *See also Collins v. National City Bank,* 2003 WL 22971874 at *6 (8th Dist. 2003).

The Defendants' arguments presented on the operation and management test are challenged as inapplicable based upon the decision of *State v. Siferd*, 151 Ohio App.3d 103, 783 N.E.2d 591 (2002).

Neither side presents nor can this Court locate any Ohio case law which addresses this argument in the context of a civil RICO claim. Assuming *arguendo* for purposes of this motion that the operation and management test is satisfied, the Court next considers whether an enterprise has been sufficiently pled.

Ohio courts faced with the enterprise question in civil RICO cases have held that "an enterprise must be a separate entity that acts apart from the pattern of activity in which it engages." *Patton v. Wilson,* 2003 WL 21473566 at *4 (8th Dist. 2003), citing *U.S. Demolition & Contracting, Inc., v. O'Rourke Constr. Co.,* 94 Ohio App.3d 75, 640 N.E.2d 235 (1994) (citation

omitted). *See also Herakovic v. Catholic Diocese of Cleveland,* 2005 WL 3007145 at *4 (8th Dist. Nov. 10, 2005); *Flanagan v. Eden,* 2005 WL 1484038 at *3 (8th Dist. June 23, 2005).

In reviewing the amended complaint, this Court cannot find that the allegations contained therein are sufficient to establish the necessary structure to establish an enterprise separate and apart from the business relationship between Capwill and the Defendants to satisfy the requirements under RICO. *See VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000) ("simply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes"). Accordingly, Defendant's motion to dismiss is granted as to Count 10.

*D. Count 11-Ohio Conspiracy Claims*

Defendants move for dismissal of the claims contained in Count 11 on the basis that malice is not sufficiently alleged and that damages related to the conspiracy have not been specifically pled.

In *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (1995), the Ohio Supreme Court defined civil conspiracy as "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" (Citations omitted.) "The conspiracy claim must be pled with some degree of specificity and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Avery v. Rossford, Ohio Transportation Improvement District,* 145 Ohio App.3d 155,165, 762 N.E.2d 388, 395 (2001) (citations omitted).

In this instance, the Receiver asserts the following allegations in Count 11:

9

226. Plaintiff incorporates by reference all prior allegations as if fully rewritten herein.

227. Capwill and the Liberty Defendants, including the bank itself acting through its agents and employees, conspired together pursuant to express and tacit agreements as well as common or implied understandings.

228. In particular, Capwill and the Liberty Defendants combined together to:

a. Form a malicious combination,

b. Of two or more persons,

c. That resulted in injury to the property of those persons represented by the Receiver, and,

d. Inflicted such injury pursuant to unlawful acts.

229. Agreement and combination between Capwill and the bank is shown by numerous facts, including but not limited to account opening agreements and other facts.

230. The bank acted with at least that form of malice often referred to as "malice in law," "implied malice," "legal malice," or "imputed" or "presumed" malice.

231. The bank's malice is demonstrated by one or more of the following:

a. The bank's wrongful and purposeful failure to file SARs or other comparable reports regarding Capwill and/or Capwill's entities and/or transactions, despite the numerous "red flags" associated with Capwill and his activities, as outlined elsewhere herein.

b. The bank's filing of SARs or other comparable reports but thereafter wrongfully and purposefully:

    i. Allowing Capwill and his entities to continue to use the bank's premises and facilities; and/or,

    ii. Continuing to do business with Capwill and his entities.

c. The lack of any reasonable or lawful excuse for the bank to:

    i. Refrain from filing SARs (or other comparable reports); and/or,

    ii. Continue doing business with Capwill and/or his entities after SARs (or other comparable reports) were filed.

d. The reasonably foreseeable risk of harm to others inherent in either failing to file SARs (or other comparable reports) and/or continuing to do business with Capwill and/or his entities after SARs (or other comparable reports) were filed.

232. Accordingly, the bank's agreements with Capwill, including but not limited to the express agreements governing Capwill's accounts and his use of the bank's facilities, as well as any implied agreements involving Capwill's ongoing activities, were made and carried out in a context that plainly showed the potential for serious financial abuses and/or white collar crime.

    233. The unlawful acts involved in the conspiracy specifically include but are not limited to the following:
     a. The bank's activities relative to SARs, which involved either:
      i. The bank's unlawful failure to file SARs despite the numerous "red flags" associated with Capwill and his various controlled accounts, which was based on deliberate ignorance, willful blindness, and/or reckless disregard of the truth, as detailed elsewhere herein; or, alternatively,
      ii. The filing of SARs but thereafter continuing to do business with Capwill and his controlled entities;
     b. Allowing Capwill to continue to use the bank's facilities and premises despite all the external and observable indicia of Capwill's wrongful behavior;
     c. Capwill's use of the bank's facilities and premises to move money to various nominees and accounts, all of which were part of Capwill's efforts to:
      i. Wrongfully take funds belonging to persons represented by the Receiver;
      ii .Launder the proceeds of such wrongful takings;
      iii. Fraudulently transfer assets so that the Receiver and/or persons represented by the Receiver could not recover said assets
    234. In addition to any tacit or implicit understandings between Capwill and the bank, there were numerous wrongful acts committed by the bank and/or Capwill, including but not limited to:
     a. The wrongful acts of the bank, as complained of herein, including but not limited to its aiding and abetting of Capwill; its acts and omissions in connection with SARs filings or the lack thereof; and its negligent acts and omissions.
     b. Capwill's wrongful and well documented misconduct, including the numerous injuries he inflicted on the receivership estate and/or persons whose interests are represented by the Receiver.
    235. As a result of the matters cited above, the bank entered into a conspiracy with Capwill and/or Capwill's nominees and/or Capwill's controlled entities, thereby making the bank jointly and/or severally liable under Ohio common law and/or other sources of Ohio law for all damages caused by Capwill and those controlled by Capwill.
    236. The bank was motivated to enter into its tacit or implied understandings with Capwill because Capwill was a significant client who offered the prospect of profits and gain to the bank and/or those bank employees who handled Capwill's affairs.

(First Amended Compl., pp. 52-55.)

Although the allegations above rely heavily on the failure to file SARs, it is not the exclusive means by which liability may be imparted under this claim.  For example, if the

11

Receiver is successful on his claim contained in Count 9 (breach of a duty of good faith), which requires a finding of bad faith, akin to willful disregard, *see Nations Title Ins. Of New York, Inc.,* 140 Ohio App.3d at 164, 746 N.E.2d at 1151, it may be sufficient to constitute malice under civil conspiracy. Unlike the claim in *Avery, supra*, and in this Court's view, the Receiver has pled facts which, if proven, could establish liability under Count 11.

Finally, the position of the Defendants regarding damages attributable to the conspiracy itself was rejected by this Court in *Ziegler v. Findlay Industries, Inc.,* 380 F.Supp.2d 909, 913-915 (N.D. Ohio 2005). After discussing the relevant interpretations on this issue, this Court opined that the Ohio Supreme Court would adopt the holding of *Gosden v. Louis,* 116 Ohio App.3d 195, 687 N.E.2d 481 (1996), and that "to succeed on a claim of civil conspiracy, a plaintiff need not plead or prove damages above and beyond those resulting from the tort or torts that are the object of the conspiracy." *Ziegler,* 380, F.Supp. at 915.

At this juncture of the proceedings, the Court cannot find as a matter of law that the Defendants are entitled to dismissal of this claim, therefore, Defendant's motion to dismiss on this issue is denied.

*E. Count 12-Contribution and Indemnity*

The final claim in the complaint is contained in Count 12 seeking contribution and indemnity. Since the claims of aiding and abetting and negligence remain viable at this juncture, the Court finds this last claim cannot be dismissed as a matter of law. *See Mahathiraj v. Columbia Gas of Ohio,* 84 Ohio App.3d 554, 563-564, 617 N.E.2d 737, 743-744 (1992) (addressing requirements for indemnity and finding implied indemnity where there is secondary liability based upon passive negligence).

12

*F. Remaining Items*

Finally, to the extent the parties incorporate those arguments contained in their memoranda related to the original motion to dismiss, the Court does not find a basis to reconsider its decision on Counts 3, 4, 5, and 7.  Therefore, the rulings as to these issues as contained in the Memorandum Opinion of March 2004 remain unchanged.

### PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

The Receiver moves pursuant to Fed. R. Civ. P. 15(a) for leave to file a second amended complaint for the purpose of adding eleven named individuals previously identified as Jane and John Does in both the original and first amended complaint.  The Defendants are opposed to this amendment on the basis that it is late in the proceedings, would unduly prejudice Liberty Bank and protract discovery.  Additionally, the Defendants' opposition charges that identity of at least two of proposed additional Defendants was available to the Receiver as early as May 2004.

Under Fed. R. Civ. P. 15(a), the trial court is vested with discretion in granting or denying an amendment.  *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  A trial court may consider a number of factors in making this determination.  Those factors may include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed.  *Id.* Additional factors may also include the need for additional discovery, strain on the court's docket, or the lack of prejudice as the issue is already known.  *See Budd Co. v Travelers Indem. Co.,* 820 F.2d 787, 792 (6th Cir. 1987).   Delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 581 (6th Cir. 1990) (citations omitted). Where a party seeks leave to amend under Rule 15(a), "a party must act with due diligence if it

13

intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake,* 49 F.3d 1197, 1202 (6th Cir. 1995) (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974)).

In November 2005, the Court extended discovery until August 18, 2006.  (Doc. No. 133). While there has been some discovery, it is apparent from the ongoing discovery disputes that the bulk of discovery has yet to occur in this litigation.  The second amended complaint does not allege new causes of action; therefore, with the  Court's adjudication of the pending motion to dismiss of the first amended complaint, there is little or no prejudice which will inure to the Defendants by the filing of the second amended complaint as it relates to the remaining claims.

Plaintiff's motion for leave to file a second amended complaint (Doc.  No. 124) is granted to the extent that it asserts the same remaining claims against newly named individuals.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss the first amended complaint (Doc. No. 85) is granted as to Counts 1, 2, 3, 4, 5, 7, and 10 and denied as to the remaining claims. What remains for trial are those claims contained in Counts 6, 8, 9, 11 and 12.  Finally, Plaintiff's motion for leave to file a second amended complaint (Doc. No. 124) is granted to add additional parties to those remaining claims.

IT IS SO ORDERED.

   S/ *David A. Katz*  
DAVID A. KATZ  
SENIOR U. S. DISTRICT JUDGE